IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luz Mary Carmona,                              :
                     Petitioner           :
                                                  :
               v.                             :   No. 865 C.D. 2017
                                                  :   Submitted: November 9, 2017
Workers' Compensation Appeal            :
Board (Allegheny Valley School of        :
Philadelphia and PMA Insurance           :
Company),                                        :
                    Respondents           :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE J. WESLEY OLER, JR., Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                   FILED: January 30, 2018

        Luz Mary Carmona (Claimant), *pro se*, petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that dismissed her appeal as untimely. At issue is a Compromise and Release (C&R) Agreement between Claimant and her employer that was approved by a Workers' Compensation Judge (WCJ). Claimant challenges the Board's dismissal for the stated reason that the C&R Agreement is contrary to what was promised to her by her counsel. We affirm the Board.

        On June 28, 2016, Claimant filed a claim petition pursuant to the Workers' Compensation Act (Act),[1] asserting she sustained a work injury on February 7, 2014. Claimant worked at a group home operated by Allegheny Valley School of Philadelphia (Employer) that serves developmentally disabled persons.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

While Claimant was pushing a patient in a wheelchair on an icy driveway, a wheel broke off the chair. In the course of trying to prevent the patient from falling, Claimant injured her neck and back. Employer issued a medical-only temporary notice of compensation payable (TNCP) accepting liability for a neck and low back strain. On April 29, 2014, Employer sent a notice to Claimant that her compensation would terminate on May 1, 2014, because Claimant had returned to work without restrictions. However, she continued to experience pain and on August 13, 2015, Claimant's doctor determined that she was not capable of working. When she did not return to work, Employer terminated her employment. In her claim petition, Claimant alleged that she was totally disabled by the work injury.

Employer denied the allegations in the claim petition, and the matter was assigned to a WCJ. Claimant, who is from Colombia, testified before the WCJ with the assistance of a Spanish interpreter. Claimant understands and speaks English, but the court reporter had difficulty with Claimant's accent. Accordingly, the WCJ directed Claimant to answer questions in Spanish for the translator to repeat in English. On that basis, the hearing proceeded.

At the first hearing, Claimant was the sole witness and testified about her work duties, her injury, and her medical treatment. The WCJ then scheduled a second hearing.

At the inception of the second hearing, several months later, the parties informed the WCJ that they had reached a settlement. In exchange for a lump sum payment of $45,000, Claimant agreed to release Employer from all liability under the Act. Specifically, Claimant released Employer from any liability for medical benefits incurred after May 1, 2014. The parties filed a petition for approval of the C&R Agreement, which the WCJ addressed.

Claimant testified, and an interpreter was again provided. When the WCJ asked if Claimant had reviewed and signed the C&R Agreement, she responded in the affirmative to both questions. Claimant's counsel then questioned her as follows:

> Q. And do you understand that if the Judge approves this settlement agreement there will be no final decision issued?
>
> A. Correct.
>
> Q. And by that I mean, if the Judge approves this settlement agreement, there will be no more hearings about whether you should get ongoing Workers' Compensation benefits.
>
> A. I understand.
>
> Q. And, [Claimant], do you understand that if the Judge approves this agreement, you will receive $45,000 in full settlement for your injury of February 7, 2014?
>
> A. Correct.
>
> Q. And do you understand that if the Judge approves this agreement, the insurance company, the Workers' Compensation insurance company will not be required to pay any additional medical bills?
>
> A. That's fine.
>
> Q. And, [Claimant], do you understand that of that $45,000, $9,000 will be sent to my firm and you will receive a check for $36,000?
>
> A. I understand.
>
> Q. And, [Claimant], did you and I have approximately 45 minutes to go over this agreement together?
>
> A. Correct.
>
> Q. And do you feel as though you understand the full legal significance of this agreement?

A. Yes, I understand.

Q. And have you had an opportunity to discuss this agreement with your family?

A. Yes, I did.

Q. And do you … remember that we discussed that you have 20 days to change your mind?

A. Yes, but I do not want to change my mind.

Q. And so if you don't want to change your mind, we call that waiving the appeal period.

A. Yes.

Notes of Testimony, 9/12/2016, at 8-9 (N.T. __).

On September 13, 2016, the WCJ approved the C&R Agreement. Crediting Claimant's testimony, the WCJ found, as fact, that Claimant demonstrated an understanding of the legal significance of the C&R Agreement and had entered into it voluntarily.

On October 26, 2016, Claimant filed an appeal captioned as a "Rule to Show Cause why I believe the Settlement Agreement Dated September 12, 2016 Should be Reversed/Rescinded." Certified Record (C.R.), Item No. 7 at 1. In her appeal, Claimant alleged that her counsel was deceptive about the terms of the C&R Agreement and that she was not given an opportunity to review the document. Instead, she was directed by her counsel to sign and initial it where indicated. Claimant alleged that Employer agreed to pay for her future medical treatment and that she would never have signed the agreement had she known they would not be covered. On September 23, 2016, she had two pain blockage injections and learned, for the first time, that the treatment was not covered by Employer.

4

In response, Employer filed a motion to quash the appeal as untimely. The WCJ's order was issued on September 13, 2016. Under Section 423(a) of the Act,[2] Claimant had 20 days to file an appeal, but she did not appeal until October 26, 2016. Therefore, her appeal was untimely.

The Board agreed and quashed Claimant's appeal. The Board explained that a claimant may appeal *nunc pro tunc* if she can show fraud, administrative breakdown, or non-negligent conduct by a party or her counsel. *Criss v. Wise*, 781 A.2d 1156, 1160 (Pa. 2001). However, Claimant did not establish any such circumstances. The Board concluded that the C&R Agreement was binding and could not be set aside.

Before this Court, Claimant raises three issues:[3] First, she asserts that the record is incomplete. Second, she asserts that the Board did not address the fact that Claimant's counsel had terminated her representation of Claimant before the hearing on the C&R Agreement. Third, she asserts that the Board did not address her counsel's misrepresentation about her medical coverage.

---

[2] It provides:

> Any party in interest may, within twenty days after notice of a workers' compensation judge's adjudication shall have been served upon him, take an appeal to the board on the ground: (1) that the adjudication is not in conformity with the terms of this act, or that the workers' compensation judge committed any other error of law; (2) that the findings of fact and adjudication was unwarranted by sufficient, competent evidence or was procured by fraud, coercion, or other improper conduct of any party in interest. The board may, upon cause shown, extend the time provided in this article for taking such appeal or for the filing of an answer or other pleading.

77 P.S. §853.

[3] Whether the Board properly quashed an appeal is a question of law subject to this Court's review. *Edgewater Steel Company v. Workmen's Compensation Appeal Board (Wolfe)*, 659 A.2d 57, 59 n.1 (Pa. Cmwlth. 1995).

5

We begin with a review of relevant law. Section 423(a) of the Act gives a claimant 20 days after service of the WCJ's decision to file an appeal. The timeliness of an appeal is jurisdictional and must be strictly enforced. *Manolovich v. Workers' Compensation Appeal Board (Kay Jewelers, Inc.)*, 694 A.2d 405, 409 (Pa. Cmwlth. 1997). An untimely appeal may be permitted if the delay "was caused by extraordinary circumstances involving fraud, a breakdown in the administrative process, or non-negligent circumstances related to the claimant, his counsel, or a third party." *Department of Labor & Industry, Uninsured Employers Guaranty Fund v. Workers' Compensation Appeal Board (Gerretz, Reliable Wagon and Auto Body, Inc.)*, 142 A.3d 148, 155 (Pa. Cmwlth. 2016).

Where a claimant can establish cause for a delay in presenting an appeal, Section 425 of the Act authorizes the Board to remand or hold a hearing *de novo*. It provides:

> If on appeal it appears that the referee's award or disallowance of compensation was capricious or caused by fraud, coercion, or other improper conduct by any party in interest, the board may, grant a hearing de novo before the board, or one or more of its members or remand the case for rehearing to any referee. If the board shall grant a hearing de novo, it shall fix a time and place for same, and shall notify all parties in interest.

77 P.S. §856.

In her first issue, Claimant asserts that the case improperly settled before discovery was completed. Thus, pertinent documents were not in evidence, and the parties did not have an informed basis for settlement. Further, Claimant has yet to receive the entire contents of her file from her former counsel.

This issue bears no relation to the questions before this Court, *i.e.*, whether Claimant is entitled to *nunc pro tunc* relief, and if so, whether she should

6

be granted a hearing pursuant to Section 425 of the Act. Claimant does not explain how the "quick" settlement caused her appeal to the Board to be untimely filed.

In her second issue, Claimant argues that her counsel had terminated their relationship before the hearing on the C&R Agreement. In support, she cites a September 7, 2016, letter from her counsel that stated as follows:

> Please be advised that I can no longer represent you with regard to the above captioned matter. Your refusal to follow my advice and your "disagreement" with my interpretation of the law prevent me from continuing to represent you. I have copied your entire file so you may seek representation elsewhere or proceed on your own.
>
> I will come to the hearing on September 12, 2016 to advise the judge of the situation.

C.R., Item No. 7, Claimant's Rule to Show Cause, Exhibit 7 at 1. In her brief, Claimant states that her lawyer then called her the next day to request a meeting "just to talk." Claimant Brief at 20. Claimant did so, and they discussed a settlement with Employer. On September 10, 2016, Claimant's counsel telephoned Claimant to relay Employer's settlement offer, and Claimant agreed to accept it.

Claimant's second issue also has nothing to do with the untimeliness of her appeal to the Board. Nor does it demonstrate error, fraud, coercion, or improper conduct. It simply establishes a disagreement with her counsel that was later resolved. Claimant did not object to her counsel's representation at the hearing on the C&R Agreement.

In her third issue, Claimant asserts that a voicemail from her counsel establishes that Employer was to be responsible for future medical bills. The message stated that "I am trying to reach you to give you some information regarding your insurance" and "Highmark is going to pay for your services for your

7

injections." Claimant Brief at 24 (emphasis omitted). Claimant argues that this message shows that her counsel misrepresented the terms of the settlement agreement.

The medical bill that, according to Claimant, prompted the voicemail, states "INJECTION, ANESTHETIC AGENT" as charged to "insurance," with "0.00" due from the patient. C.R., Item No. 7, Claimant's Rule to Show Cause, Exhibit 6 at 3. There is also an "Unapplied Payment" listed on the bill as a "credit" equaling $1,940. *Id.* Claimant does not explain the relevance of this exhibit.

Another exhibit, also not explained, is a summary from Claimant's medical provider dated October 19, 2016. C.R., Item No. 7, Claimant's Rule to Show Cause, Exhibit 18 at 1. This summary is somewhat illuminating. It states that PMA Insurance Company, the workers' compensation insurer, denied liability for the claim, stating that the "CLAIM IS CLOSED." *Id.* The summary also states that Claimant had another source of insurance, *i.e.*, Highmark. The summary states:

> I VERIFIED HIGHMARK PT DED $4200 ($1438.76 MET) PLAN WILL PAY AT 50% OF [CONTRACTED] RATE WITH A 50% COINS, UP TO OOP $5400 (2315.67 MET) ONCE OOP MET PLAN WILL PAY AT 100% OF CONTRACTED RATE WITH NO COINS[.]

*Id.* According to the summary, Claimant owed $970 for a prior visit and $970 for the visit at issue, with Highmark paying the balance. *Id.*

It does not appear, as Claimant suggests, that counsel's voicemail to Claimant was to assure her that Employer would be paying for the injections; Claimant's exhibits confirm that Employer denied the claim. Claimant had health insurance coverage through Highmark, which partially covered the injections;

8

counsel's voicemail stated that "Highmark" would pay for the injections, not "Employer."[4]

The issue is whether the Board erred in denying Claimant's untimely appeal because she did not provide a basis for a *nunc pro tunc* appeal. Claimant insists that she was misled by her lawyer regarding her future medical expenses and did not learn that Employer was not responsible for paying them until one month later.

The C&R Agreement specifically advises "[n]o medical bills will be paid for dates of service after 5/1/2014." C&R Agreement ¶4. "Claimant releases all liability for medical benefits incurred after 5/1/2014." *Id.*, ¶10. "Claimant will set aside $3,600 out of her settlement funds to be used for treatment for the work-related injury that might otherwise be covered by Medicare. Claimant feels that this is adequate to cover doctor visits, possibly some physical therapy, possibly some injections or prescriptions medications." *Id.*, ¶14.

Claimant argues that she did not know what was in the C&R Agreement and only signed it because of her lawyer's assurances that future medical benefits would be paid. She notes that the C&R Agreement was in English, impeding her ability to understand its terms. The record does not support this contention.

_____

[4] Additionally, the C&R Agreement indicates that Claimant was approved for Social Security Disability, but not yet Medicare eligible. C&R Agreement ¶13. Claimant's documentation establishes that she began receiving Social Security Disability in February 2016, and will receive "Medicare coverage automatically after [she has] received disability benefits for two years[,]" *i.e.*, February 2018. C.R., Item No. 7, Claimant's Rule to Show Cause, Exhibits 2A and 3B. The C&R Agreement acknowledged "the interests of Medicare," and required Claimant to set aside $3,600 out of the settlement funds to be used for treatment for the work-related injury that might otherwise be covered by Medicare. C&R Agreement ¶14. Accordingly, a portion of the $3,600 should be used to pay the remaining balance of the bill. In fact, the summary notes that Claimant did pay the $1,940 that was due. C.R., Item No. 7, Claimant's Rule to Show Cause, Exhibit 18 at 1.

The WCJ asked Claimant if she had time to review the C&R Agreement before she signed it, and she responded "[y]es." N.T., 9/12/2016, at 7. Her counsel asked her "do you understand that if the Judge approves this agreement, the insurance company, the Workers' Compensation insurance company will not be required to pay any additional medical bills?" *Id*. at 8. Claimant replied, "[t]hat's fine." *Id*. at 9. Her counsel then asked, "did you and I have approximately 45 minutes to go over this agreement together?" *Id*. Claimant replied, "[c]orrect." *Id*. At the conclusion of the hearing, the WCJ asked Claimant whether she understood all of the questions and if she wanted the C&R Agreement approved. Claimant responded "[y]es, I do." *Id*. at 10.

Claimant argues that her late filing should be excused because she did not know her future medical bills would not be covered under the C&R Agreement. This argument is completely inconsistent with her testimony that she understood future medical benefits would not be paid. Simply, Claimant is not entitled to *nunc pro tunc* review, and the Board did not err in so holding.

Accordingly, the order of the Board is affirmed.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Luz Mary Carmona,             :
           Petitioner     :
                          :
       v.              :   No. 865 C.D. 2017
                          :
Workers' Compensation Appeal   :
Board (Allegheny Valley School of  :
Philadelphia and PMA Insurance   :
Company),               :
          Respondents   :

# **O R D E R**

AND NOW, this 30th day of January, 2018, the order of the Workers' Compensation Appeal Board dated May 15, 2017 in the above-captioned case is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge